IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LAC COURTE OREILLES BAND OF
LAKE SUPERIOR CHIPPEWA INDIANS
OF WISCONSIN,

                      OPINION AND ORDER

          Plaintiff,

                      08-cv-659-bbc

    v.

KEN SALAZAR, Secretary of the Interior;
GEORGE T. SKIBINE, Acting Deputy Assistant
Secretary of the Interior for Policy and Economic
Development and Acting Assistant Secretary for
Indian Affairs; KEVIN SKENANDORE, Acting
Director, Bureau of Indian Education; and LYNN
LAFFERTY, Education Line Officer, Bureau of
Indian Education,

         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is a civil action for declaratory and injunctive relief brought under the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 450j-1(f), in which plaintiff Lac Courte Oreilles asks this court to bar defendants Ken Salazar, George Skibine, Kevin Skenandore and Lynn Lafferty from enforcing a bill for collection issued by the Bureau of Indian Affairs or pursuing any future right or remedy related to any disallowance of costs

1

associated with the Single Agency audit for the fiscal year ending June 30, 2005. The court has original jurisdiction under 25 U.S.C. § 450m-1.

This case is now before the court on defendants' motion to dismiss plaintiff's complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Defendants assert that because the Bureau of Indian Affairs has cancelled the bill for collection that is the subject of this lawsuit, there is no longer a case or controversy and the complaint must be dismissed. In the alternative, defendants argue that to the extent that plaintiff is concerned about any future dispute regarding the disallowed costs for which defendants issued their bill for collection, such a dispute is not ripe. Plaintiff contends that a case and controversy exists because it has requested that defendants be prevented from pursuing any right of action or remedy related to the disallowance of costs that gave rise to the bill for collection.

Because I conclude that defendants' cancellation of the bill for collection did not satisfy plaintiff's entire demand for relief and that it is not clear that defendants will not engage in the activity at issue in the future, this case is not moot. Further, because plaintiff's requests present a question of law and plaintiff may suffer hardship if a determination is not made, I find that this matter is ripe. Thus, I will deny defendants' motion to dismiss.

As an initial matter, I note that defendants assert in a footnote that an action under 25 U.S.C. § 450m-1 "may be brought against the Secretary" and that a new Secretary of the

2

Interior has been appointed. I have revised the caption to reflect that Ken Salazar is the current Secretary of the Interior. Fed. R. Civ. P. 25(d) (newly appointed public officer automatically substituted in cases where plaintiff suing predecessor in official capacity). However, because defendants have not shown that the other named defendants are no longer in their positions, they will remain named parties in this action.

For the purposes of deciding the pending motion, I find the following facts from the complaint and the parties' submissions.

JURISDICTIONAL FACTS

Plaintiff Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin is a federally recognized Indian Tribe with headquarters on its reservation in Hayward, Wisconsin. Defendant Ken Salazar is Secretary of the United States Department of the Interior. Defendant George Skibine is Acting Deputy Assistant Secretary for Policy and Economic Affairs in the Department of the Interior and has been delegated all the authority of the Assistant Secretary for Indian Affairs within the department. Defendant Kevin Skenandore is Director of the Bureau of Indian Education in the Department of the Interior. Defendant Lynn Lafferty is Education Line Officer for the Minneapolis Education Line Office of the Bureau of Indian Education.

Since 1976, plaintiff has operated the Lac Courte Oreilles Ojibwe School, which is

3

funded through a grant authorized by the Tribally Controlled Schools Act, 25 U.S.C. §§ 2501-2511, and awarded by the Secretary of the Interior through the Bureau of Indian Education. Grants awarded under the Act are of indefinite duration and may be revoked by the secretary only for the limited reasons set forth in 25 U.S.C. § 2505(c). The Tribally Controlled Schools Act requires grantees to provide annual financial audits conducted pursuant to the standards set out in the Single Audit Act of 1984. 25 U.S.C. § 2505(b)(l)(B). Defendant Lafferty is responsible for reviewing audits submitted by grant recipients in the midwestern region and making management decisions relating to any audit findings. Under the statute, the Bureau of Indian Affairs has 365 days to notify a grant recipient of any costs that will not be allowed under the grant and inform the grant recipient about its appeal rights. 25 U.S.C. §§ 450j-1(f) and 2507(a)(8).

Midwest Professionals, P.L.L.C., performed the single audit for the Lac Courte Oreilles Ojibwe School for the fiscal year ending June 30, 2005. In a letter dated August 9, 2007, defendant Lafferty notified plaintiff that the bureau intended to disallow certain costs under the grant for fiscal year 2005. Although the notification was timely, it failed to advise plaintiff of its appeal rights.

In a letter dated April 16, 2008, Lafferty informed plaintiff that "[a]ccording to the 2005 A-133 Audit Finding 1 . . . the BIE-ISEP grant fund and the general fund had accumulated a deficit fund balance of $3,089,660 . . . The tribe will have until May 2, 2008,

4

to respond and/or appeal this finding before I make a final decision . . . My final decision will be made by May 24, 2008." The deficit fund is composed of both the Bureau of Indian Affairs school operation funds and general funds. General funds include money such as tribal contributions and donations. The deficit fund had been accumulating since the fiscal year ending June 30, 1997, when plaintiff engaged in deficit spending of both its general and federal grant funds.

In an April 29, 2008 letter, Midwest Professionals estimated that as of June 30, 2007, the fund balance deficit had been reduced to $1,824,000. In a letter dated May 2, 2008, Louis Taylor, Chairman of the Tribal Governing Board, responded to defendant Lafferty. Taylor noted that plaintiff had made honest efforts to reduce the deficit and asked Lafferty to take that fact into consideration.

On May 13, 2008, defendant Lafferty issued two memoranda regarding the 2005 single audit for the school: one to plaintiff, stating that a bill for collection had been requested and one to the National Business Center of the Department of the Interior, requesting that it issue a bill for collection to plaintiff in the sum of $1,824,000 "for the June 30, 2005, A-133 Single Audit Findings." The National Business Center issued plaintiff a bill for collection dated August 14, 2008 in the amount of $1,824,000. However, after plaintiff filed its action in this court, the Bureau of Indian Affairs cancelled the bill for collection, conceding that it had provided inadequate notification to plaintiff.

5

DISCUSSION

In this case, plaintiff makes three requests of the court: (1) to issue a declaratory judgment that defendants are barred under 25 U.S.C. § 450j-1(f) from enforcing the bill for collection and are further barred from pursuing any other right of action or remedy related to defendants' disallowance of costs with respect to any Single Audit of the Lac Courte Oreilles Ojibwe School for the fiscal year ending June 30, 2005; (2) to issue an injunction ordering the defendants to cease and desist from any collection action or any other right of action or remedy related to any disallowance of costs with respect to the Single Agency audit for the fiscal year ending June 30, 2005; and (3) to set aside defendant Lafferty's May 13, 2008 memorandum and the resulting bill for collection as not in accordance with applicable laws and regulations, as issued without observance of procedures required by law and as unwarranted by the facts. Defendants move to dismiss this case for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

A motion to dismiss under Rule 12(b)(1) addresses the court's subject matter jurisdiction, derived from the case or controversy clause of Article III of the United States Constitution. Whether the case presents a justiciable controversy depends on whether "'there is a real and substantial controversy, admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be

upon a hypothetical state of facts.'" Public Service Commission of Utah v. Wycoff Co., Inc., 344 U.S. 237, 242-43 (1952) (quoting Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 241 (1937)).  The Court of Appeals for the Seventh Circuit has acknowledged that "the distinction between a 'controversy' in the Article III sense and an abstract question of law 'is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy.'" Deveraux v. City of Chicago, 14 F.3d 328, 330-31 (7th Cir. 1994) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).  However, "if the declaratory judgment will clarify and settle the disputed legal relationships and afford relief from the uncertainty and controversy that created the issues, it is usually resolved rather than dismissed." Tempco Electric Heater Corp. v. Omega Engineering, Inc., 819 F.2d 746, 749 (7th Cir. 1987) (citing Edwin Borchard, Declaratory Judgments 299 (2d ed. 1941) (summarizing the purposes of declaratory judgments)).

Defendants have two separate arguments in support of their assertion that no case or controversy exists in this case.  First, defendants contend that plaintiff's case was rendered moot when defendants withdrew the bill for collection.  Second, defendants contend that any future dispute that might arise concerning the disallowed costs in the withdrawn bill for collection is not yet ripe.

7

A. Mootness

When the issues in a case are no longer live or the parties lack a legally cognizable interest in the outcome, the case is moot and a federal court loses jurisdiction over it. Powell v. McCormack, 395 U.S. 486, 496 (1969). Such can be the case when plaintiff's entire demand has been satisfied. St. John's United Church of Christ v. City of Chicago, 502 F.3d 616, 626 (7th Cir. 2007). Defendants contend that by withdrawing the bill for collection and acknowledging that they cannot collect costs through the audit from the fiscal year ending June 30, 2005, they have satisfied plaintiff's entire demand for relief.

I agree that plaintiff's third request for relief, that the court set aside Lafferty's memorandum and bill for collection, is moot. Defendants have acknowledged legal and procedural flaws in the process and timing of the issuance of these documents. However, I am not persuaded that defendants have satisfied plaintiff's entire demand for relief. As plaintiff points out, it has requested declaratory and injunctive relief with respect to "any other right of action or remedy" for the disallowed costs identified in the audit.

It is well established that a defendant's voluntary cessation of an activity does not deprive the court of jurisdiction unless it is "absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur." United Phosphorus, Ltd. v. Angus Chemical Co., 393 U.S. 199, 203 (1968); Magnuson v. City of Hickory Hills, 933 F.2d 562, 565 (7th Cir. 1991) (stating if voluntary cessation of enforcement action rendered case

8

moot, state could evade declaratory review forever by ceasing enforcement activities once law was challenged, only to "return to old tricks once the coast is clear."). In a voluntary cessation case, the defendant bears a heavy burden when it tries to persuade the court that a controversy is moot. Ragsdale v. Turnock, 841 F.2d 1358, 1365 (7th Cir. 1988). However, when the government is the party accused of illegal conduct, courts tend to trust the finality of a voluntary cessation so long as it appears genuine. Id.

Plaintiff argues that because the deficit is likely to appear in future audits, defendants could attempt to recover the disallowed costs in future years. As plaintiff notes, defendant Lafferty acknowledged that the costs she sought to collect in the 2008 bill for collection were listed in the school audit from the fiscal year ending June 30, 2004. Further, plaintiff has shown that the deficit identified in that audit originated in the fiscal year ending on June 30, 1997. Defendants argue that under 25 U.S.C. § 450j-1(f), they cannot attempt to recover the disallowed costs based on the audit from the fiscal year ending June 30, 2005. However, whether the statute precludes defendants from attempting to recover the disallowed costs in conjunction with any future year's audit is the question that plaintiff wants answered. Thus, defendants have failed to show that this case has been rendered moot by its dismissal of the bill for collection.

### B. Ripeness

9

Defendants contend that to the extent that plaintiff is worried about a future attempt to recover the disallowed costs from the audit for the fiscal year ending on June 30, 2005 by some other means, such a dispute is not ripe. Because defendants did not raise this argument until their reply brief, plaintiff did not have an opportunity to respond. Nonetheless, it is the court's role to determine whether a case is ripe, even if it means raising the issue sua sponte. Metropolitan Washington Airports Authority v. Citizens for Abatement of Aircraft Noise, Inc., 501 U.S. 252, 265 (1991).

Even though plaintiff's claims are not moot, they still must be ripe in order to constitute a case or controversy under Article III. The ripeness requirement prevents "the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . ." Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967). "The inquiry into ripeness is made more complicated when the suit is brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, and hence seeks preemptive relief, but the ability to bring suit under that Act does not vitiate the constitutional requirement that the claim address a case of actual controversy." Wisconsin Central Ltd. v. Shannon, 539 F.3d 751, 759 (7th Cir. 2008) (internal quotations omitted). In discussing ripeness in the context of a declaratory judgment, the Court of Appeals for the Seventh Circuit has stated that: "'[t]he disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision

10

will have on the adversaries, and some useful purpose to be achieved in deciding them.'" Peick v. Pension Benefit Guaranty Corp., 724 F.2d 1247, 1261 (7th Cir. 1983) (quoting Wycoff, 344 U.S. at 244). Courts should not issue judgments when litigants are merely trying to prepare for future litigation and not trying to declare any specific right or immunity. Wycoff, 344 U.S. at 245-46.

The ripeness determination involves evaluating both "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbott Laboratories, 387 U.S. at 149. When a question is "predominately legal," there is generally no need to await further factual development. Pacific Gas and Electric Co. v. State Energy Resource Conservation and Development Commission, 461 U.S. 190, 201 (1983); see also Marusic Liquors, Inc. v. Daley, 55 F.3d 258, 261 (7th Cir. 1995) (stating that when terms of law are clear and application straightforward, "[t]hat ordinarily makes a dispute ripe for decision.").

In this case, the issue before the court is essentially a legal question and therefore fit for review. Plaintiff requests an ultimate determination of its rights under the Indian Self-Determination and Education Assistance Act and asks for a judgment that under 25 U.S.C. § 450j-1(f), defendants are barred from attempting to recover by any future means any disallowed costs that occurred in the fiscal year ending on June 30, 2005, or any prior fiscal year. Because plaintiff is simply requesting the court to interpret its rights under 25 U.S.C.

11

§ 450j-1(f), it is unlikely that further factual development will be helpful to the court's decision. Plaintiff also is trying to establish its rights related to a specific factual situation that already exists.

Because plaintiff did not have an opportunity to respond to defendant's argument that any future dispute is not ripe, this court is not fully aware of all the hardships that plaintiff might suffer if the court withholds its determination. However, it is reasonable to infer that withholding judgment on this matter will hinder plaintiff's ability to accurately conduct financial planning because the availability of grant funds for the school's operation in future fiscal years remains uncertain at this time.

Thus, I find that this case is ripe for review and that plaintiff has the right to receive a determination of its rights under 25 U.S.C. § 450j-1(f) as it applies to the disallowed costs that were the subject of the now withdrawn bill for collection.

ORDER

IT IS ORDERED that:

1. Defendants' motion to dismiss, dkt. #14, is DENIED.

2. Pursuant to this court's text only order entered on March 13, 2009, dkt. #26, defendants must file an answer to the complaint within 10 days of the date of this order.

3. The stay imposed in the March 13 order is lifted. Defendants have until May 15,

2009 to respond to plaintiff's pending motion for summary judgment. Plaintiff has until May 27, 2009 within which to reply.

Entered this 23rd day of April, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

13